IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CAROLYN THIEBES and BETTY )
ALDERSON, on behalf of themselves )
and all others similarly situated, )
                                                    )
                         Plaintiffs, )
                                                    )      Civil No. 98-802-KI
    v. )
                                                    )      OPINION
WAL-MART STORES, INC., a Delaware )
Corporation, )
                                                    )
                           Defendant. )
                                                    )

Sean Donahue
Donahue & Associates
1620 Benjamin Franklin Plaza
Portland, Oregon 97258-2098

James M. Piotrowski
Nevin, Herzfeld & Benjamin
303 W. Bannock
Boise, ID 83702

Page 1 - OPINION

William Rutzick
Rebecca J. Roe
Schroeter, Goldmark and Bender
810 Third Avenue, Suite 500
Seattle, Washington  98104

    Attorneys for Plaintiffs

David G. Hosenpud
Rudy A. Englund
Leah C. Lively
Lane Powell Spears Lubersky, LLP
601 S. W. Second Avenue, Suite 2100
Portland, Oregon  97204-1383

Gregory S. Muzingo
Wal-Mart Stores, Inc.
702 S. W. 8th Street
Bentonville, Arkansas  72716-8095

    Attorneys for Defendant

KING, Judge:

This case arises out of plaintiffs' employment with defendant Wal-Mart Stores, Inc. ("Wal-Mart"). After approximately six years of litigation and two trials, on September 29, 2004, a judgment was entered in favor of 83 opt-in plaintiffs against Wal-Mart in the amount of $210,731.53. Detailed factual and procedural history of this case has been set forth in prior Opinions of the court and will not be repeated here. Before the court is plaintiffs' Motion for Attorney Fees and Costs (#785), plaintiffs' Bill of Costs (#775) and Wal-Mart's Bill of Costs (#792).

## DISCUSSION

Plaintiffs seek $1,968,511.29 in attorney fees and expenses. Of this, $1,730,171.30 is for attorney hours, $30,069.00 is for legal assistant hours, and $208,270.99 is for expenses. Plaintiffs seek compensation for approximately 7000 attorney hours and 300 paralegal hours.

I.   Applicable Law

In addressing a petition for attorney fees under federal law, the court must first determine the "lodestar" amount by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996), amended on other grounds, 108 F.3d 981 (1997). In calculating the lodestar amount, the court should consider the factors specified in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976), that are subsumed in that calculation. Id. at 364 n.9. The factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 363 n.8.

The factors subsumed in the lodestar calculation, and thus to be considered in determining the number of reasonable hours and the reasonable hourly rate, are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained, and the contingent nature of the fee agreement. Id. at 364

n.9. Next, the court must consider the necessity of adjusting the lodestar amount based on the Kerr factors that are not subsumed within the initial lodestar calculation. Id. at 363-64. There is a strong presumption, however, that the lodestar amount is a reasonable fee. Nevertheless, in rare cases, this strong presumption may be rebutted through the application of those factors not subsumed in the lodestar calculation. Id. at 364 n.8.

A reduction of the lodestar fee may be justified when the plaintiff fails to obtain relief on all claims, and if hours spent on unsuccessful claims were not needed to pursue successful claims. Quesada v. Thomason, 850 F.2d 537, 539 (9th Cir. 1988). In Gates v. Deukmejian, 987 F.2d 1392, 1404 (9th Cir. 1992), the court explained:

> The district court first asks if the plaintiff did not prevail on claims that were unrelated to those on which he succeeded and excludes any fees associated with those unsuccessful claims. Second, the court makes further reductions when plaintiffs' success on any remaining interrelated unsuccessful and successful claims was limited.

To exclude the hours spent litigating unsuccessful claims, a court can identify specific hours to eliminate or simply reduce the award to account for the limited success. Mathematical formulas or percentages may be used. Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 904-05 (9th Cir. 1995).

The court may dispense with the calculation of a lodestar amount and establish a low fee or no fee at all if the plaintiff prevails but receives only nominal damages and achieves only "technical" success. Nominal damages includes awards of $1 and any other award that may properly be classified as "de minimis." Morales v. City of San Rafael, 96 F.3d 359, 362-63 (9th Cir. 1996), amended, 108 F.3d 981 (1997) (citing Farrar v. Hobby, 506 U.S. 103 (1992)).

The Oregon wage law provides that "[i]n any such action the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees." ORS. § 652.615 (2003). Oregon law also provides the following list of factors a court must consider when determining whether and in what amount to award attorney fees:

> (1) A court shall consider the following factors in determining whether to award attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide whether to award attorney fees:
>
> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
>
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.
>
> (2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide whether to award attorney fees. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

PAGE 5 - OPINION

  (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

  (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

  (c) The fee customarily charged in the locality for similar legal services.

  (d) The amount involved in the controversy and the results obtained.

  (e) The time limitations imposed by the client or the circumstances of the case.

  (f) The nature and length of the attorney's professional relationship with the client.

  (g) The experience, reputation and ability of the attorney performing the services.

  (h) Whether the fee of the attorney is fixed or contingent.

ORS § 20.075(1)-(2).

  Plaintiffs seek attorney fees under the Fair Labor Standards Act ("FLSA") and Oregon law. Wal-Mart argues that plaintiffs cannot recover any fees under the FLSA because none of the awards in the jury's verdict are based on the terms of the FLSA. Only 10 plaintiffs, under Wal-Mart's calculation, obtained awards during the relevant FLSA time period. Wal-Mart also argues that plaintiffs waived their rights to FLSA attorney fees when they elected state law penalties and interest remedies and disclaimed the FLSA remedies. Finally, Wal-Mart argues that even if those plaintiffs could get fees under the FLSA, the court should exercise its discretion and address all of the fees at issue under Oregon law.

The primary difference in applying federal or state law would be that under federal law, I would calculate an initial lodestar amount. However, both parties appear to concede that the result would likely be similar under either law and that Oregon law is as favorable or more favorable to plaintiffs. Moreover, even if I made an initial lodestar calculation, I would still need to arrive at a determination of reasonable fees. I will apply Oregon law in evaluating the motion for attorney fees.

II.     Plaintiffs' Success

Wal-Mart's primary argument in opposition to plaintiffs' motion is that plaintiffs' limited success does not justify the fee award sought. Wal-Mart argues that at the very most, plaintiffs were "prevailing parties" under Oregon law only with respect to the 83 plaintiffs in whose favor the court entered judgment.

First, Wal-Mart argues, as it has with respect to the court's numerous decisions related to the method of trying this case, that the first jury's verdict did not establish Wal-Mart's liability, did not render all of the then-remaining plaintiffs "prevailing," and had little if any effect on the second jury's findings. As I have done in resolving both pre and post-trial motions, I reject Wal-Mart's position regarding the relevance of the first trial and verdict. With the exceptions described below, I will not automatically discount the fee award for work done during the first phase of the trial in this case.

In the context of describing plaintiffs' success, Wal-Mart also focuses on the small number of plaintiffs remaining in the action at the end and the small amount of the awards. Among other figures, Wal-Mart notes that less than 1% of the group given an opportunity to join this lawsuit had claims submitted to a jury, and of those 108 claimants, only 83 obtained any

award.[1] Wal-Mart also focuses on the 310 claimants who were dismissed from the action at various points, because they either did not have valid claims to begin with or failed to prosecute them. Wal-Mart argues that plaintiffs' counsel should not be awarded fees associated with the prosecution of these plaintiffs' claims and that the amounts should be reduced proportionately. Finally, Wal-Mart notes that the total unpaid wages of the 83 claimants collectively amounts to only $6,209.47 (not including penalties), which is grossly disproportionate to the amount of fees requested.

Plaintiffs of course paint a different picture of their success. Plaintiffs focus on what they consider to be the significant outcome of the "liability" phase of the litigation. They obtained a jury verdict finding that Wal-Mart had, in the stores and during the time period at issue, permitted a pattern or practice of off-the-clock work and that Wal-Mart's actions were willful. They argue that they then accomplished their ultimate mission of obtaining vindication and compensatory damages for those plaintiffs found to have worked off-the-clock.

Plaintiffs acknowledge that many claimants did not recover damages in the second phase of the trial, but they state that they have reduced their fees to account for that fact, except when the work done was also relevant to those plaintiffs who did recover damages. The Oregon Court of Appeals has explained:

> Statutes that authorize an award of attorney fees to a party who succeeds or prevails in a proceeding authorize an award for the fees reasonably incurred to achieve the success that the party actually achieved. If the party asserts several claims that are subject to an award of fees but prevails on only one of them, fees can be awarded only for the time reasonably necessary to prevail on the sole claim on which the party prevailed. That does not necessarily mean that time devoted to

---

[1] In deciding a motion for fees, I fail to see the relevance of the number of people who never joined this lawsuit in the first place.

PAGE 8 - OPINION

> the other claims may not be recoverable. If, for example, there are common issues among the claims, it may not be necessary to apportion the fees between the claim on which the party succeeded and those on which the party did not. In that circumstance, the court might conclude that it would have taken roughly the same amount of time to litigate a case in which the successful claim was the sole claim as it took to litigate the case in which it was one among several claims, so it would not be necessary to apportion the fees to reflect the lack of success on the other claims.

Freedland v. Trebes, 162 Or. App. 374, 378-79, 986 P.2d 630 (1999) (internal citation omitted). Under this reasoning, plaintiffs would be entitled to fees for the work they did for unsuccessful plaintiffs if the time spent was on work also relevant to the plaintiffs who did receive an award. I agree with plaintiffs' argument that they are entitled to recover fees for work done during the first phase of the trial, provided that it was relevant to the verdict obtained in the first phase, but time claimed which is specific to the damages claims of the plaintiffs who presented evidence during the second phase of the trial but were not awarded a judgment will be discounted.

Wal-Mart raises specific objections to hours billed which Wal-Mart claims were expended on plaintiffs whose claims were adjudicated in Wal-Mart's favor. Plaintiff has conceded some but not all of these objections. With regard to specific objections, the court finds as follows:

1) <u>Fees for plaintiffs whose claims were adjudicated in Wal-Marts favor (Wal-Mart's Opposition page 16)</u>. Plaintiff concedes this request. The total reduction is $28,050.00.

2) <u>Pilar Vaile time and rate (Wal-Mart's Opposition page 21)</u>. Plaintiff agrees that the request should be reduced and the court finds that it is reasonable to allow 401.75 hours at the rate of $125.00 per hour for Ms. Vaile's services.

3) <u>Objections to the time entries of the hourly rate of Michelle Bowdon (Wal-Mart's</u>

PAGE 9 - OPINION

Opposition page 23). I find that 160 hours of Ms. Bowdon's time involved investigative tasks which should be charged at the rate of $100.00 per hour, rather than the rate of $175.00. Accordingly, I find that the fee request on account of Ms. Bowdon should be reduced to the total sum of $76,156.25.

4) <u>Billing rates of Ann Calico and Janis Johnson (Wal-Mart's Opposition page 24)</u>. I will allow a billing rate of $90.00 per hour for Ann Calico. This reduces the request by $1,566.00. I will allow a billing rate of $100.00 for Janis Johnson. This results in no reduction to plaintiff's request.

5) <u>Fees and expenses not attributable to the 83 successful plaintiff's claims. (Wal-Mart's Opposition page 24)</u>. Wal-Mart argues that all time corresponding to the 21 witnesses in the first phase of the trial should be deducted from plaintiff's attorneys fee award, a requested reduction of $15,075.00. As previously stated, I will not discount the fee award for work done during the first phase of the trial which was relevant to the first phase verdicts and therefore deny this objection.

6) <u>Wal-Mart's request for additional deductions to reflect the true number of hours that plaintiffs' counsel spent in preparing and presenting the trial testimony of unsuccessful plaintiffs during the second phase of the trial (Page 25, Wal-Mart's Opposition)</u>. Wal-Mart argues that the billing records indicate that plaintiffs spent longer than they estimated in preparing for and presenting the trial testimony of unsuccessful plaintiffs in both phases of trial. Wal-Mart relies upon the Foster declaration paragraphs 6 and 7. I will not deduct the time for preparation and attending depositions of non-prevailing plaintiffs who testified at phase one of the trial. This time is listed in paragraph 6 of the Foster declaration. Wal-Mart calculates that Mr. Piotrowski and Ms. Roe spent 125 hours for preparation and trial testimony of non-prevailing plaintiffs. The

only deduction has been Mr. Piotrowski's deduction of 28 hours. Plaintiffs have not responded to this objection. I find that there should be an additional deduction for preparation and presentation of trial testimony of non-prevailing plaintiffs in the amount of $29,125.00.

Wal-Mart also argues that the time spent by plaintiffs preparing for and deposing Wal-Mart's witnesses who rebutted the claims of plaintiffs who were ultimately unsuccessful or whose testimony was never used at trial should be deducted from plaintiffs' total fees. Wal-Mart argues that there should be a deduction for the taking of 7 depositions in the amount of $8,900.00. The time is listed in paragraph 8 of the Foster declaration. Plaintiffs have not responded to this objection. I will deduct $8,900.00 on account of the time spent on those depositions.

After applying the deductions set forth above to plaintiffs' request for fees based upon hours and rates, the request is:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| James M. Piotrowski | 3,341.90 | $250 | $835,475.00 |
| Shane C. Youtz | 1,552.75 | $250 | $388,187.50 |
| William J. Rutzick | 571 | $325 | $185,575.00 |
| Rebecca Roe | 558.2 | $325 | $181,415.00 |
| Pilar Vaile | 401.75 | $125 | $50,218.75 |
| Michelle Bowdon | 343.75 | $175 | $60,156.25 |
| Michelle Bowdon (Investigative Tasks) | 160 | $100 | $16,000.00 |
| Nga Starzewski | 52.25 | $175 | $9,143.75 |
| Anne Calico | 156.60 | $90 | $14,094 |
| Janis Johnson | 159.75 | $100 | $15,975 |
| TOTAL | 7,297.95 | | $1,756,240.30 |

Less deduction for unsuccessful plaintiffs during phase two:   $38,025.00

ADJUSTED REQUEST:   $1,718,215.30

PAGE 11 - OPINION

In justifying their prevailing status, plaintiffs also describe institutional changes made at Wal-Mart which they attribute to this lawsuit. Wal-Mart correctly notes that in a case applying federal law, Buckhannon Board and Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources, 532 U.S. 598, 605-06 (2001), the Supreme Court rejected such a "catalyst theory" which would allow for fee awards based on a non-judicially sanctioned change in the defendant's conduct. Wal-Mart also argues that plaintiffs cannot show that any institutional changes at Wal-Mart are the result of this lawsuit. While I do believe that this case has had effects reaching beyond the judgment obtained by these 83 plaintiffs, I will not consider this type of success in resolving this motion.

I acknowledge Wal-Mart's argument that the fee award appears disproportionate to the amount recovered. However, plaintiffs correctly point out that even the cases cited by Wal-Mart involve similar disparities. See, e.g., Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212, 221 (D. Mass. 2004) (awarding attorney fees more than 10 times amount recovered even after reduction by court). As discussed below, I have considered the relatively small monetary award in this case in deciding whether to apply a fee enhancement, but I do not believe the law supports a proportionate reduction in the fees for this reason.

In determining the amount of fees I conclude that the following factors are relevant, in addition to the other factors set forth in this opinion.[2]

1)     Substantial time and labor were required over the six plus years this case was pending. It involved numerous novel and difficult questions.

---

[2] As noted on the record on December 7, 2004, I will not consider the parties' arguments or evidence regarding settlement negotiations.

2)     Mr. Piotrowski and Mr. Youtz devoted a great deal of time to this case. This undoubtedly had a substantial effect on the acceptance of other employment.

3)     The hourly rates charged by the attorneys compare favorably with the fees customarily charged in this locality for similar legal services.

4)     The fee of the attorneys was contingent and the attorneys were required to advance substantial amounts for expenses.

### III. <u>Number of Hours Claimed and Hourly Rates</u>

With respect to the actual number of hours expended, Wal-Mart does not appear to dispute that plaintiffs' counsel put in the work so claimed. Wal-Mart raises several other objections, however, to the number of hours for which payment is sought.

Wal-Mart blames plaintiffs for delay in resolving this case. I note, however, that Wal-Mart presented a formidable defense, had a team of attorneys greater in number than plaintiffs had, and filed dozens of substantive motions plaintiffs were required to defend. I also note that Wal-Mart did not elect to disclose to the court the amount of hours its attorneys billed in defending the action. I acknowledge Wal-Mart's point that a good deal of time was spent determining the validity of and ultimately dismissing numerous plaintiffs' claims. On the whole, however, I find the number of hours spent to be appropriate for a case of this magnitude and reject Wal-Mart's suggestion that plaintiffs' counsel spent more time than necessary on this case.

Likewise, I find it reasonable that plaintiffs' counsel brought on two additional attorneys as co-counsel prior to this case proceeding to the second trial. Mr. Rutzick and Ms. Roe have significant experience in presenting damage claims of this nature and have been successful in Oregon cases. Wal-Mart argues that Mr. Rutzick and Ms. Roe spent considerable time learning

about the nature of the case and contends that they should not be compensated for "review" time. I disagree. The limited time spent educating themselves was necessary and reasonable.

With respect to Wal-Mart's contention that counsels' documentation regarding time spent is inadequate, in general I find that the records and supporting declarations submitted are sufficiently detailed.

Plaintiffs seek an award of attorney fees at hourly rates ranging from $175 to $325 per hour, which are the attorneys' 2004 billing rates. These rates are within the range of prevailing market rates and appropriately calculated for each attorney's experience level. Likewise, the hourly rates of $90 and $100 are reasonable for paralegal work. Although Wal-Mart contends that the requested rates are on the high end, it does not present much argument as to why the court should not apply the requested hourly rates. It does dispute plaintiffs' use of 2004 billing rates, contending again that plaintiff is responsible for any delay in resolving the case. I do not attribute the length of this litigation to plaintiffs any more than to defendants. Applying the 2004 rates will enhance the fees from the earlier years of this litigation, but I find it appropriate because of the contingent nature of the case and counsel's need to advance funds.

IV.     Fee Enhancement/Reduction

Plaintiffs also request that the fees be enhanced by 30% under state law, consistent with the contingent nature of the case. "Whether the fee of the attorney is fixed or contingent" is among the factors the court should consider in determining the amount of the fees. ORS § 20.075(2)(h). Wal-Mart objects to the enhancement of plaintiffs' fees, and instead argues they should be adjusted downward.

PAGE 14 - OPINION

I will not adjust the fees upward for several reasons. First, while plaintiffs were successful during the first phase of the trial and in resisting a determined defense by Wal-Mart, the amount of damages was small. Although I do not use this as a basis to reduce plaintiffs' counsel's fees by a directly proportionate amount, it is a factor I have considered in deciding not to enhance the fees. Additionally, I will not enhance the fees upward because I am using the 2004 rates. As explained, this results in an enhancement for earlier years of the litigation.

V.   Costs

Plaintiffs request costs in the amount of $208,270.99. The costs sought include the filing fee, photocopies, deposition costs, trial transcripts, postage, class notice costs, and travel expenses. These expenses overlap with the Bill of Costs filed separately by plaintiffs. The court will award plaintiffs' expenses included in the motion for fees. Plaintiffs' Bill of Costs is moot.

Wal-Mart requests costs related to 25 unsuccessful testifying plaintiffs, in the total amount of $15,593.74. Plaintiffs have not filed any objections to Wal-Mart's cost bill. The cost bill seeks costs of transcripts, depositions, fees and copying costs related to the first and second phases of the trial. For the reasons set forth previously I deny the request for costs as to transcripts and trial exhibits for the first phase of trial in the amount of $2,503.38. Wal-Mart's request for costs in the amount of $13,090.36 is allowed. \

///

///

## CONCLUSION

Plaintiffs' Motion for Attorney Fees and Costs (#785) is granted in part and denied in part, plaintiffs' Bill of Costs (#775) is denied as moot, and Wal-Mart's Bill of Costs (#792) is granted in part. Plaintiff shall have judgment in the amount of $1,718,215.30 for attorney fees and $208,270.99 for costs. Wal-Mart shall have judgment for costs in the amount of $13,090.36.

Dated this ___18___ day of January, 2005.

                                                             /s/ Garr M. King
                                                            Garr M. King
                                                            United States District Judge